**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF VERMONT**

| | |
|---|---|
| DAVID BANFORD, ROBERT MILLER, GARY STRATTON, AND SCOTT MCGRATTY<br><br>           Plaintiffs,<br>v.<br><br>ENTERGY NUCLEAR OPERATIONS, INC.,<br><br>           Defendant. | Case No. 2:12-CV-00131-WKS |

### DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION IN LIMINE TO PRECLUDE USE OF FLUCTUATING WORKWEEK METHOD TO DETERMINE DAMAGES

Defendant Entergy Nuclear Operations, Inc. ("ENOI") hereby opposes Plaintiffs' Motion in Limine to Preclude Use of Fluctuating Workweek Method to Determine Damages, Docket No. 139 ("Motion").  The Motion is not a proper motion *in limine*.  It does not seek a ruling to exclude evidence at trial, but rather a legal ruling on the proper damages calculation theory, which is a determination for the Court to make after the facts have been presented at trial.  For that reason alone, the Motion should be denied.  Moreover, the Plaintiffs labor to convince this Court it should categorically proclaim, without considering any evidence of Plaintiffs' employment arrangements, that the fluctuating workweek methodology of calculating damages cannot be applied in misclassification cases.  The Plaintiffs' arguments, however, (i) ignore the facts that will be established in this case, (ii) misconstrue applicable law, and (iii) fail to distinguish the compelling weight of legal authority—from the Supreme Court, all six Circuit Courts of Appeals that have addressed the issue, many District Courts (including District Courts

in the Second Circuit), and the U.S. Department of Labor ("DOL")—which establishes the fluctuating workweek method appropriately is applied to determine damages in cases like this. Therefore, Plaintiffs' Motion should be denied.

## ARGUMENT

I.   **Plaintiffs' Motion Should Be Denied Because It Does Not Seek A Ruling On Evidentiary Issues And Prematurely Seeks A Ruling On A Question Of Law That Cannot Be Determined In The Absence Of The Presentation Of Evidence At Trial.**

The purpose of a motion *in limine* is to exclude *evidence* clearly not admissible at trial. *See United States v. Goodale*, 831 F.Supp. 804, 808 (D. Vt. 2011) (Sessions III, J.); Fed. R. Evid. 104(a) (cited by Plaintiffs as basis for Motion, stating the Court "must decide any preliminary question about whether a witness is qualified, a privilege exists, or *evidence is admissible*"). However, Plaintiffs' Motion does not ask the Court to make any evidentiary ruling or exclude any evidence. In fact, the evidence relevant to *any* damages calculation that would be required after a finding of liability—i.e. the number of hours worked by Plaintiffs and their rates of pay—will remain relevant and admissible regardless of the applicability of the fluctuating workweek method. The legal question raised by the Plaintiffs' Motion is an issue appropriately addressed in Fed. R. Civ. P. 50 motions and/or the parties' proposals for, and the Court's crafting of, jury charges. Making that determination now would be improper, because the appropriate damages methodology turns in part upon facts to be adduced at trial. *See infra* Section II–III. Therefore, the Court should not rule *in limine* on this legal issue, and should defer ruling until the parties have presented their evidence. *See Goodale*, 831 F.Supp. at 808–09 (rejecting motion *in limine* to exclude evidence that would require pretrial determination of issues of fact meant for trial).

## II.  Plaintiffs Ignore The Facts Of This Case, Which Will Show That The Fluctuating Workweek Method Is Properly Applied Here.

Plaintiffs ask that the Court issue an advisory ruling untethered to the facts of this case. Specifically, they ask that the Court rule that using the fluctuating workweek model to calculate damages contravenes Congressional intent, and that it cannot, as a matter of law, be used in a misclassification case. Plaintiffs, however, provide no evidence concerning the specifics of their own employment relationships. Rather, they appear to argue they are entitled to time-and-a-half for all hours over forty in a workweek simply because they believe this should be the result in *every* FLSA misclassification case.

Here, once the evidence is presented at trial, it will be clear that Plaintiffs (i) were paid a fixed salary each week meant to compensate them for whatever hours they had to work, (ii) understood this from the outset and throughout their employment based on the parties' employment agreement and course of conduct, (iii) worked hours that fluctuated substantially from week to week, (iv) sometimes worked more, and sometimes worked less, than forty hours per week, and (v) were never paid a regular rate calculated by dividing their fixed weekly salary by the number of hours worked in any one week, that was below the minimum wage.

From the start of their employment, each Plaintiff knew that in exchange for his substantial fixed salary, his Security Shift Supervisor ("SSS") duties required him to work at least the same shift hours as the Security Officers they supervised. The shift hours worked by Security Officers fluctuated above and below 40 hours from week to week because of the nature of shift scheduling at Vermont Yankee. The SSSs knew they had to work at least the hours their assigned Security Officers worked and that SSS duties could require additional time after the Security Officers' shift ended. In any event, they knew that just their baseline hours—time they

spent supervising a shift—would vary from week to week, and their pay would not. Moreover, the evidence will show that Plaintiffs' working hours did vary substantially throughout their ENOI employment from week to week. However, their weekly pay remained constant, even if they worked less than 40 hours in a week.

On these facts, the Court should apply the fluctuating workweek remedial model set forth in *Overnight Motor Transportation Co., Inc. v. Missel*, 316 U.S. 572 (1942) and the many persuasive opinions—including all six Courts of Appeal to have weighed in on the issue—that follow its rationale in cases like this one, *see infra* Section III. As this great weight of authority establishes, once the factfinder concludes Plaintiffs were paid a salary intended to compensate them for all hours worked, Plaintiffs' "regular rate" must be calculated for each week by dividing the total hours worked into their salary, with any overtime owed being calculated on a "half time" as opposed to a "time-and-a-half" basis. Because the facts will show Plaintiffs' salary was paid for all hours worked (whether few or many), each Plaintiff's salary has already covered the straight-time pay, leaving only the half-time premium unpaid (assuming for the sake of argument any overtime is found to be due). Put differently, Plaintiffs have already been paid "time" just not "half" time.

**III.    The Weight of Authority Establishes That the Fluctuating Workweek (or Half-Time) Method Would Be the Appropriate Method to Use to Calculate Damages in the Event of a Finding of Liability in This Case.**

Every Circuit Court of Appeals to have addressed the question (First, Fourth, Fifth, Seventh, Tenth, and Eleventh) and many District Courts (including some within the Second Circuit) have held that when, as here, an allegedly misclassified employee is paid a salary that, by agreement or understanding, is intended to compensate him for all hours worked, the fluctuating workweek, or "half-time" method, as opposed to "time-and-a-half," is the appropriate

remedial method for calculating overtime damages. *See Ransom v. M. Patel Enters., Inc.*, 734 F.3d 377, 384–86 (5th Cir. 2013) ("FWW is the proper method of calculating overtime when an employee . . . [is] paid a weekly wage and [is] expected to work fluctuating hours."); *Lamonica v. Safe Hurricane Shutters*, 711 F.3d 1299, 1311 (11th Cir. 2013) (in reliance on *Missel,* holding that, where factfinder determines salary is compensation for all hours worked, "the fluctuating workweek method may be used to calculate an employee's regular rate of pay and corresponding overtime premium for use in determining damages under the FLSA"); *Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 355–57 (4th Cir. 2011) (holding *Missel* applies in misclassification cases where the plaintiff was paid a salary for all hours worked and affirming award of "half time" overtime premium); *Urnikis-Negro v. Am. Family Property Servs.*, 616 F.3d 665, 681–83 (7th Cir. 2010) (under *Missel*, employee paid $1,000 per week for fluctuating hours was only entitled to half-time for overtime hours because she had already received her straight time pay for all hours worked); *Clements v. Serco, Inc.*, 530 F.3d 1224, 1230–31 (10th Cir. 2008) (affirming award based on fluctuating workweek method where the parties intended plaintiff would be paid a fixed salary for all hours worked); *Valerio v. Putnam Assocs., Inc.*, 173 F.3d 35, 39–40 (1st Cir. 1999) (half-time appropriate rate of recovery where plaintiff was paid a fixed salary for fluctuating hours); *see also Klein v. Torrey Point Grp., LLC*, 979 F. Supp. 2d 417, 438 (S.D.N.Y. 2013) (where an employee is paid a lump sum for all hours worked, "the effective wage would be the flat wage divided by the total hours worked, and the employee would be owed a 50% premium of that wage for each hour of overtime"); *O'Neill v. Mermaid Touring Inc.*, 968 F. Supp. 2d 572, 587 (S.D.N.Y. 2013) (fluctuating workweek calculation applies if facts establish misclassified employee was paid a fixed salary regardless of number of hours worked, hours fluctuated, and was not paid overtime); *Torres v. Bacardi Global Brands*

*Promotions, Inc.*, 482 F. Supp. 2d 1379, 1381–82 (S.D. Fla. 2007) (holding that allegedly misclassified employee would receive overtime, if due, calculated on the basis of "half time" where his salary had already compensated him at his "regular rate" for all hours worked in the workweek); *Rushing v. Shelby Cnty. Gov't*, 8 F. Supp. 2d 737, 745 (W.D. Tenn. 1997) (where plaintiffs were paid a salary intended to compensate them for all hours worked, the method of calculation set forth in *Missel* applies); *Zoltek v. Safelite Glass Corp.*, 884 F. Supp. 283, 286–88 (N.D. Ill. 1995) (parties impliedly agreed that salary was to cover all work, and therefore *Missel* formula applies).

The DOL also has approved this same methodology to determine the amount of payment of overtime premiums to formerly misclassified, salaried employees. The DOL found that an employer's proposal complied with the FLSA where the employer intended to (i) divide the weekly equivalent of the employee's salary by the total hours worked in a particular workweek; (ii) multiply the resulting regular rate by one-half, and (iii) multiply the resulting half-time rate by the number of overtime hours worked during that workweek. U.S. DOL Opinion Letter 2009-3 (Jan. 14, 2009).[1]

The Supreme Court interpreted the FLSA and established this remedial model in *Overnight Motor Transportation Co., Inc. v. Missel*, 316 U.S. 572 (1942). *Missel* addressed the application of the overtime pay provision of the FLSA, 29 USC § 207(a)(1), in situations in which an employee has been paid a set weekly salary for a variable work schedule. The Supreme Court held that the appropriate means to calculate the "regular rate" used as the baseline for calculating overtime premiums is to divide the employee's fixed weekly wage by the

---

[1] Although DOL opinion letters do not constitute binding authority, such opinions constitute "a body of experience and informed judgment to which courts and litigants may properly resort for guidance" and thus the Second Circuit "often relie[s] on DOL Opinion Letters for their persuasive value." *Barfield v. New York City Health & Hospitals Corp.*, 537 F.3d 132, 149 (2d Cir. 2008) (*quoting Gualandi v. Adams,* 385 F.3d 236, 243 (2d Cir. 2004)).

number of hours actually worked in a particular week, *not* forty hours. *Id.* at 580–81 and n. 16; *Urnikis-Negro*, 616 F.3d at 675–76; *Klein*, 979 F. Supp. 2d at 435. The employee's fixed weekly salary therefore was compensation, at the regular rate, for *all* hours that the employee worked in a week, including any hours greater than forty.[2] The employer in *Missel* was therefore required to pay the employee an additional one-half of the regular rate for hours beyond forty, rather than time-and-a-half. This is because the employee had already received straight pay at his regular rate for those hours. *See Urnikis-Negro*, 616 F.3d at 675 (*analyzing Missel*, 316 U.S. at 580).

The logic for using the *Missel* fluctuating workweek/ half-time calculation model in a misclassification case like this, as opposed to the time-and-a-half model, is aptly described by the Seventh Circuit in *Urnikis-Negro* and Southern District of New York in *Klein*:[3]

> [O]vertime damages must be calculated somehow, and that calculation—regardless of whether the underlying employment agreement violated the FLSA by failing to provide overtime for a covered employee—must begin by determining the employee's regular rate of pay. The choice is between two assumptions: either the employee agreed to be paid a lump sum per week for 40 hours of work and no more, or the employee agreed to be paid a lump sum per week, no matter how many hours he worked.

*Klein*, 979 F.Supp.2d at 438; *see also Urnikis-Negro*, 616 F.3d at 670.

For a court to assume, as Plaintiffs do, that in all misclassification cases the employee agreed to the fixed salary in exchange for working only forty hours per week, would mean that the employee had received no payment (of either straight time or overtime premiums) for the

---

[2] In *Missel***,** the Court mandated that the "regular rate" that results from this calculation must be greater than minimum wage. 316 U.S. at 580. Plaintiffs do not contend, nor could they based on their salary level, that in any week their regular rate calculated pursuant to the *Missel* method caused them to receive hourly compensation less than the minimum wage.

[3] Plaintiffs have cited *Urnikis-Negro* and *Klein* in their Motion as purportedly supporting their position, but both cases actually hold that the fluctuating workweek properly is applied in cases such as this one. Those courts stated 29 C.F.R. § 778.114 was not, in and of itself, a sufficient basis upon which to use the fluctuating workweek methodology. However, as explained further in Section IV.b, Plaintiffs' focus on 29 C.F.R. § 778.114 is a red herring, and both the *Urnikis-Negro* and *Klein* courts held that fluctuating workweek methodology *is appropriate in misclassification cases like this one* on the independent grounds that it was the remedial scheme established by the Supreme Court in *Missel*.

hours he worked beyond forty. *See Urnikis-Negro*, 616 F.3d at 680. That conclusion directly conflicts with the Supreme Court's interpretation of the FLSA in *Missel*, which holds that, when the employer and employee understand that a fixed amount of pay is given for variable weekly work hours, the employee's salary constitutes compensation (at his regular rate) for all hours. *Id.*; *see also Desmond,* 630 F.3d at 357 (*Missel* "contains nothing to indicate why [FWW] computation would not apply in determining unpaid overtime compensation under 29 U.S.C. § 216(b) in a mistaken exemption classification case").

Moreover, here and in all of the cases discussed above, applying Plaintiffs' assumption that their substantial salary only compensated them for a forty hour workweek would be contrary to the facts, which will show Plaintiffs understood they held a salaried position in which they knew their hours would fluctuate, but their regular rate of pay would not. This is all that is required to mandate application of the fluctuating workweek method to calculate damages. This understanding is often found based on the parties' course of conduct, including the common situation in which the employee was paid a fixed salary and, regardless of their beliefs as to the hours required, regularly worked a fluctuating schedule that required more than forty hours per week. *See Urnikis-Negro*, 616 F.3d at 680–81 (despite employee's belief that she would only work forty hour schedule, evidence established she and company understood her salary was to cover whatever time she was called upon to work); *Ransom*, 734 F.3d at 385–86 (although employee, at time of hiring, expected to work a certain fixed number of hours, understanding of fixed rate for fluctuating hours established by course of conduct in which employee often worked much more than initial expectation, and sometimes less); *Clements*, 530 F.3d at 1230–31 (clear mutual understanding where employees were hired on a salary basis, and were neither docked for working less than forty hours per week, nor paid more in weeks in which they worked more than

forty hours); *Valerio*, 173 F.3d at 39–40 (employee understood fixed salary was for fluctuating hours where regularly ended up working more than forty hours per week); *see also Mayhew v. Wells,* 125 F.3d 216, 218 (4th Cir.1997) ("[T]he existence of [a 'clear mutual understanding'] may be based on the implied terms of one's employment agreement if it is clear from the employee's action that he or she understood the payment plan in spite of after-the-fact verbal contentions otherwise."); *see also* U.S. DOL Opinion Letter 2009-3 ("[a]n agreement or understanding need not be in writing in order to validate the application of the fluctuating workweek method of paying overtime.  Where an employee continues to work and accept payment of a salary for all hours of work, her acceptance of payment of the salary will validate the fluctuating workweek method of compensation as to her employment").

## IV.     Plaintiffs' Arguments Misconstrue the Law.

Plaintiffs ask that the Court rule the fluctuating workweek model never can properly be applied to determine the amount of overtime premiums owed for prior misclassifications. However, as detailed above in Section II, the weight of authority holds to the contrary, and establishes that the fluctuating workweek model is an appropriate remedy in cases like this.  In an effort to avoid the impact of that authority, Plaintiffs misconstrue applicable law.

### a.   *Missel* Does Not Forbid, and in Fact Authorizes, Application of the Fluctuating Workweek Method in a Misclassification Case Such as This One.

Plaintiffs argue, contrary to the holdings of all six Circuit Courts to have considered the issue, and the DOL, that the *Missel* methodology cannot be extended to misclassification cases because (i) the employees in such cases did not understand that their salary compensated them for all hours worked *except overtime*, because they did not believe they were entitled to overtime as a result of alleged misclassification and (ii) application of this methodology would necessarily mean Plaintiffs unlawfully had waived their overtime rights.  *See* Motion at 5–9.  These

arguments are a distortion of the law and the actual impact of application of the *Missel* remedial methodology here.

Plaintiffs' argument that the fluctuating workweek cannot apply because they did not have an understanding their fixed salary represented compensation for all hours worked, *except for overtime,* misses the mark. As *Missel* and its progeny make clear, the only understanding that matters is whether the employee understood he would be paid a fixed salary for each workweek regardless of the number of hours worked. *See supra* Section II. As the Seventh Circuit explained in *Urnikis-Negro*, in misclassification cases the employer and (often) the employee fail to recognize there is any entitlement to overtime. However, while such a misclassification violates the FLSA, "that breach of the statute does not alter the employee's regular rate of pay, which under *Missel* turns on what the parties agreed the employee would be paid for the hours he actually worked (so long as the rate is not lower than the minimum wage)." 616 F.3d at 680–81; *see Clements*, 530 F.3d at 1230 (rejecting employee's argument that there was no mutual understanding as to overtime due to misclassification; parties only must have reached an understanding that while hours may vary, base salary will not); *Valerio*, 173 F.3d at 40 (same); U.S. DOL Opinion Letter 2009-3 (all that is required is that the employee and employer have a clear understanding that employee will be paid on a salary basis for all hours worked).

Plaintiffs' argument that application of the *Missel* fluctuating workweek model to calculate damages in misclassification cases would constitute an unlawful waiver of rights to overtime pay represents a misunderstanding by Plaintiffs, and the District Court opinions upon which Plaintiffs' rely for this point, of the impact of the *Missel* model here. As Plaintiffs point out, the Supreme Court in *Missel* did not concur with the employer's position that it was *not*

*required* to pay overtime. Nor do the many decisions applying the fluctuating workweek model hold that an employer in a misclassification case need not pay overtime. Instead, in cases like this, the fluctuating workweek model provides the appropriate method of calculation of the regular rate based on the total hours worked, and recognizes the employer has already paid all straight time. Therefore, the model mandates damages of only "half-time" (the premium portion) for all overtime hours worked. Thus, a misclassified employee has not forfeited any FLSA right to overtime pay and this damages model does not, in Plaintiffs' words, "require[] that validity be conferred upon an unlawful arrangement that violates the FLSA." *See* Motion at 8. Rather, applying the fluctuating workweek model leads to payment of overtime pay appropriate to the facts and circumstances of the parties' employment arrangement.

> **b. Plaintiffs' Claim That 29 C.F.R. § 778.114 Prohibits Application of the Fluctuating Workweek Remedial Model is a Red Herring.**

Plaintiffs also argue at length that the fluctuating workweek method of calculating damages is inappropriate because ENOI cannot satisfy the requirements of 29 C.F.R. § 778.14 ("Section 778.114"), the DOL interpretive regulation setting forth the requirements that an employer must satisfy to establish a pay structure that pays an employee based on the fluctuating workweek method. *See* Motion at 9–13. Specifically, Plaintiffs argue, since they were treated as exempt and not paid overtime, ENOI cannot satisfy the requirements that: (i) there be "a clear mutual understanding . . . that the fixed salary is compensation (*apart from overtime premiums*) for the hours worked each workweek," and (ii) it made "contemporaneous" payment of overtime premiums to Plaintiffs during their employment. *See id.* (emphasis added). These are also the principal reasons the judges in most of the District Court opinions cited by Plaintiffs refused to apply the fluctuating workweek remedial scheme, incorrectly concluding that the *Missel* fluctuating workweek doctrine could *only* be applied if Section 778.114's prerequisites were met.

Plaintiffs' and those District Courts judges' analyses improperly conflate the fluctuating workweek regulation with the damages calculation. In other words, while the fluctuating workweek method in Section 778.114 is a compensation method, the *Missel* fluctuating workweek, half-time damages calculation method is part of the FLSA's remedial scheme for make-whole relief, which is properly applied in cases like this.

It is undisputed that Plaintiffs were not paid on a fluctuating workweek basis pursuant to Section 778.114 during their employment. Instead, they were treated as salaried, exempt employees who received a salary to compensate them for all hours worked, regardless of the number of hours worked per week. Thus, ENOI's inability to satisfy the requirements of Section 778.114, which are applicable to *prospective* payments to employees, is irrelevant to the issue before the Court, whether the fluctuating workweek remedial scheme is proper.

Several courts, and the DOL in its 2009-3 Opinion Letter, have concluded that Section 778.114 supports the retroactive use of the fluctuating workweek method from *Missel*, upon which Section 778.114 was based, to calculate damages in cases involving misclassification. *See, e.g.*, *Clements,* 530 F.3d at 1230; *Valerio,* 173 F.3d at 39–40; U.S. DOL Opinion Letter 2009-3. In these authorities, courts and the DOL held that so long as evidence demonstrated an employee understood he was paid a set amount each week for hours that fluctuated, compensation should be awarded based on a half-time basis, even if no contemporaneous payment of overtime was made during the employment. *See id.* Thus, the decisions applied the same standard as the several courts that have applied the *Missel* methodology without relying on Section 778.114.[4]

---

[4] Although *Clements*, 530 F.3d at 1230-31, *Valerio*, 173 F.3d 35 at 39–40, and U.S. DOL Opinion Letter 2009-3 all cited to Section 778.114 for support, they concluded that the fluctuating workweek calculation method was proper solely because there was an understanding between the employer and employee that their pay would be a fixed salary regardless of the number of hours worked. There was no analysis of whether there had been an understanding

Most of Plaintiffs' argument is devoted to the proposition that evidence of such an understanding is not enough.  They argue the language of Section 778.114 mandates there be additional showings that the parties had an understanding as to how overtime would be calculated, and that the employer contemporaneously paid overtime premiums.  It is correct that several courts, including cases cited by Plaintiffs and several cases that retroactively apply the fluctuating workweek model from Missel, have interpreted Section 778.114 as an insufficient basis, on its own, to apply the use the fluctuating workweek model as a retroactive damages model. *See, e.g.*, *Urnikis-Negro*, 616 F.3d at 681–83; *Klein*, 979 F. Supp. 2d at 437–38; *O'Neill*, 968 F. Supp. 2d at 586; *see also Perkins v. S. New England Tel. Co.*, 3:07-CV-967 JCH, 2011 WL 4460248 (D. Conn. Sept. 27, 2011); *Hasan v. GPM Investments, LLC*, 896 F. Supp. 2d 145, 146 (D. Conn. 2012).  However, whether Section 778.114 alone can serve as the basis for a retroactive award of damages in a particular case need not be decided here.  There is an *independent basis* for awarding damages using the fluctuating workweek or "half-time" method.  As discussed above, many Circuit Courts and District Courts in the Second Circuit have concluded that the Supreme Court's *Missel* decision provides a separate and independent basis for using the fluctuating workweek or "half time" remedial model in cases like this.  *See Ransom*, 734 F.3d at 384–86; *Desmond*, 630 F.3d at 355–57; *Urnikis-Negro*, 616 F.3d at 681–83; *Lamonica*, 711 F.3d 1299; *Klein*, 979 F. Supp. 2d at 438; *O'Neill*, 968 F. Supp. 2d at 587.

### c. Application of the Fluctuating Workweek Method to Calculate Damages Does Not Undermine Congressional Intent.

Finally, Plaintiffs argue that calculating damages using the fluctuating workweek, half-time model violates Congress's intent in enacting the FLSA.  Specifically, they argue that

---

as to overtime pay, or contemporaneous overtime payments. These alleged defects are the reason why Plaintiffs, and several courts, have questioned the reliance *on Section 778.114* in those decisions.  However, the holding in those decisions is consistent with the Supreme Court's *Missel* holding and the many other opinions that apply the fluctuating workweek method solely based on *Missel*.

allowing this method of damages calculation creates "perverse incentives" because the longer an employee is required to work, the lower their regular rate (and thus overtime premium) will become.  Plaintiffs argue this will encourage employers to misclassify employees intentionally. *See* Motion at 13–15.  Plaintiffs' argument, which really is a complaint that the remedial scheme established by the Supreme Court in *Missel* is not "fair," is not a basis to ignore clear authority mandating use of the fluctuating workweek as the remedy here.

In making their argument, Plaintiffs ignore the fact that federal courts, including the Supreme Court, have considered these exact concerns and nevertheless established the fluctuating workweek, half-time remedial scheme.  *See Missel*, 316 U.S. at 580 (acknowledging that where an employee is paid a set rate for fluctuating hours "[i]t is true that the longer the hours the less the rate and the pay per hour" but noting that "[t]his method of computation has been approved by each circuit court of appeals which has considered such problems."); *Urnikis-Negro*, 616 F.3d at 684 (acknowledging arguments made by Plaintiffs, but explaining they had been considered in *Missel* and other cases applying same methodology).  Additionally, Plaintiffs' argument that application of the fluctuating workweek remedial methodology as a damages measure will encourage employers to intentionally misclassify employees ignores the fact the FLSA provides additional remedies in willful violation cases.  *See Urnikis-Negro*, 616 F.3d at 684 (in response to employee complaint that the fluctuating workweek method incentivizes intentional misclassification, the Court explained that if employer willfully misclassifies employee, there are additional remedies for employee and harsher consequences for employer). Finally, to the extent the Supreme Court and DOL's interpretation of the FLSA's remedial provisions should be changed because of "fairness" concerns like those raised by Plaintiffs, that is a matter for Congress or the executive branch, not the courts.  *See id.* (changes to the Supreme

Court interpretation of FLSA is a matter for legislative or executive, not judicial, action); *see also Ransom*, 734 F.3d at 385 (error for judge to fail to follow *Missel* and Circuit precedent applying fluctuating workweek in misclassification cases because judge found theory "fundamentally flawed").[5]

Moreover, applying the fluctuating workweek, half-time remedial damages methodology is bolstered by traditional principles of compensatory damages, which are designed to compensate "the injured person for the loss suffered." *See Desmond*, 630 F.3d at 357 (citations omitted). Allowing Plaintiffs to recover time-and-a-half for all hours over forty in a workweek, despite the fact they have already been compensated for those hours on a straight-time basis, would provide Plaintiffs a windfall, beyond the scope of damages contemplated and authorized under the FLSA. In addition, the evidence will show that Plaintiffs work hours fluctuated such that, at times, they worked less than forty hours per week but were still paid their fixed salary. Thus, they were paid a higher regular rate than the traditional forty hour per week calculation would provide.

---

[5] The Magistrate Judge criticized by the Fifth Circuit was the Judge that issued two opinions upon which Plaintiffs rely heavily: *Ransom v. M. Patel Enters., Inc.*, No. 10-CA-857, 2011 WL 5239229 (W.D. Tex. Nov. 1, 2011), discussed at Motion p. 7, and *In re EZPawn*, 633 F. Supp. 2d 395 (W.D. Tex. 2008), discussed at Motion p.11.

## CONCLUSION

For the reasons set forth herein, the Court should deny Plaintiffs' Motion in Limine to Preclude Use of Fluctuating Workweek Method to Determine Damages, Docket No. 139.

DATE:  August 29, 2014                /s/ Geoffrey J. Vitt
                                      Geoffrey J. Vitt
                                      VITT BRANNEN & LOFTUS, PLC
                                      8 Beaver Meadow Road
                                      P.O. Box 1229
                                      Norwich, VT 05055
                                      (802) 649-5700
                                      gvitt@vbllawyers.com

                                      Attorney for Defendant,
                                      Entergy Nuclear Operations, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that copies of Defendant's Opposition to Plaintiffs' Motion in Limine to Preclude Use of Fluctuating Workweek Method to Determine Damages have been served by regular mail, postage pre-paid, this 29th day of August, 2014, to:

   Joshua R. Diamond, Esq.
   Diamond & Robinson, P.C.
   P.O. Box 1460
   Montpelier, VT  05601-1460

   Joseph Galanes, Esq.
   Galanes Law
   P.O. Box 880
   Norwich, VT  05055

                                      /s/ Geoffrey J. Vitt
                                      Geoffrey J. Vitt
                                      Attorney for Defendant,
                                      Entergy Nuclear Operations, Inc.

Case 2:12-cv-00131-wks   Document 147   Filed 08/29/14   Page 17 of 17

-17-