```
                UNITED STATES DISTRICT COURT
                         FOR THE
                   DISTRICT OF VERMONT


DAVID BANFORD,                      :
ROBERT MILLER,                      :
GARY STRATTON, and                  :
SCOTT MCGRATTY                      :
                                    :    Case No. 2:12-cv-131
        Plaintiffs,                 :
                                    :
    v.                              :
                                    :
ENTERGY NUCLEAR                     :
OPERATIONS, INC.                    :
                                    :
        Defendant.                  :
```

## Opinion and Order

Plaintiffs David Banford, Robert Miller, Gary Stratton and Scott McGratty bring this suit against Defendant Entergy Nuclear Operations, Inc. ("Entergy") challenging their designation as exempt employees for purposes of overtime pay under the Fair Labor Standards Act and related state statutes. Plaintiffs work at Vermont Yankee, a nuclear power plant owned by Entergy, as Security Shift Supervisors ("SSS"). Trial is scheduled to begin on September 15, 2014.

On August 15, 2014 Defendant filed its Submission Regarding Evidence and Other Trial Issues in which it announced its intention to introduce two videos at trial not previously produced in discovery: (1) a video of a tabletop exercise conducted by the Training Department at Vermont Yankee ("the

tabletop video") and (2) an industry video that describes how security at a nuclear power plant is handled ("the industry video").  In their Response, Plaintiffs noted that they would "strenuously object" to the introduction of these videos at trial.  Pl. Resp. to Def.'s Submission Regarding Evid. and Other Trial Issues at 2.

At a pre-trial hearing on September 1, 2014 Plaintiffs first argued that the videos contained non-admissible hearsay. The court requested additional briefing on the admissibility of the videos, which the parties submitted on September 9, 2014.

For the reasons stated below, Plaintiff's request to exclude the videos is **denied**.

## Factual Background

The tabletop video was created by the security training department at Vermont Yankee as a demonstration of the tabletop training exercises the department regularly conducts with Security Shift Supervisors.  It features four men standing around a multi-level map.  One of the men presents a description of a hypothetical security breach and the other three respond with what actions they would take in response in real time. Occasionally text appears on the screen when the speaker uses an acronym or jargon and this text spells out or explains the potentially unfamiliar word or phrase.  The footage of the four men is occasionally intercut with several aerial photographs of

Vermont Yankee with text and arrows pointing to specific areas for reference.  It is 24 minutes and 5 seconds long.

Entergy provided affidavits from Chris Hager, Senior Security Trainer at Vermont Yankee, Ed Wilson, former Senior Security Trainer at Vermont Yankee, and Jeff Parker, Security Shift Supervisor at Vermont Yankee.  Def.'s Resp. to Request for Affidavits Regarding Admissibility of Demonstrative Tabletop Video, Exs. A-C.  Each affiant confirms the video fairly and accurately represents tabletop training exercises conducted regularly at Vermont Yankee through the training department.  Mr. Wilson will be present at trial.

The industry video is an excerpt from *Safe and Secure: Protecting Our Nuclear Energy Facilities*, a video created by the Nuclear Energy Institute presenting "the security measures in effect at nuclear power plants."  *See Video Database*, http://www.nei.org/resourcesandstats/documentlibrary/safetyandsecurity/video/nuclearpowerplantsecurityvideo.  It features a computer generated model of a nuclear power plant that graphically highlights different areas of the plant and their respective security levels.  It also features video footage of vehicles being searched, crash resistant gates, concrete barriers, metal detectors, a card reader and hand scanner, and security officers in a control room.  The video is narrated by a

3

female voice describing what is taking place on screen. It is 1 minute and 36 seconds long.

## Discussion

### I. The Tabletop Video

The Court possesses broad discretion to determine the mode by which evidence is presented to the jury. *See* Fed. R. Evid. 611(a); *SR Int'l Bus. Ins. Co. v. World Trade Center Properties, LLC*, 467 F.3d 107, 119 (2d Cir. 2006). This discretion generally encompasses the authority to allow the use of demonstrative aids. *Castaldi v. Land Rover North America, Inc.*, 363 Fed App'x 761, 762 (2d Cir. 2009).

Plaintiffs argue that the actors' statements in the videos are hearsay not subject to any exception. Fed. R. Evid. 802, 803. Hearsay is "a statement that . . . a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Entergy does not intend to offer the tabletop exercise video to prove the truth of the statements in the video but rather to demonstrate how one of the training exercises that the Plaintiffs engage in as part of their job is conducted. Def.'s Resp. at 2. Entergy does not seek to admit hearsay because statements that are not offered for their truth are not hearsay.

Demonstrative aids may be offered to illustrate or explain the testimony of witnesses if they are a fair and accurate

4

representation of that testimony.  *See United States v. Yousef*, 327 F.3d 56, 158 (2d Cir. 2003); 2 McCormick On Evid. § 214 (7th ed.).  The affidavits from Vermont Yankee employees state that the tabletop video is a fair and accurate representation of tabletop exercises regularly conducted in the Training Department.  Defendant does not claim it will introduce the video to prove the truth of "the duties of the SSS under an alleged hypothetical event" as Plaintiffs suggest but rather to demonstrate to the jury what a tabletop exercise looks and sounds like.  Pls.' Resp. at 3.

Plaintiffs also argue that the video evidence is admissible as demonstrative evidence only if it depicts events not reasonably conveyed in court and that on balance are more probative than prejudicial under Fed. R. Evid. 403(b).  Plaintiffs cite two cases to support their argument.  Both are distinguishable.  First, in *Thompson v. TRW Automotive U.S.,* No. 2:09-cv-1375 *LLC*, 2014 WL 2612271 (D. Nev. June 11, 2014) the court declined the plaintiff's request to pre-admit two day-in-the-life videos because the witnesses featured gave statements concerning the events of the accident at issue and were planning to testify at trial.  Next, in *Bolstridge v. Central Maine Power Co.*, 621 F. Supp. 1202 (D. Me. 1985) the court also declined to admit a day-in-the-life video in which witnesses gave statements that could easily be presented in court.  The video did not

5

convey observations of witnesses to the jury more fully or accurately than the witness could have conveyed through the medium of conventional, in-court examination.  *Id.* at 1204.  These witnesses' statements, unlike those in the tabletop video, were offered for their truth so cross-examination was crucial.  Moreover, Plaintiffs do not explain how a real time demonstration of a tabletop exercise could be conveyed easily in court.  The video may help the jury visualize and better comprehend witness testimony about how the plant is laid out and what a tabletop exercise entails.

     Finally, Plaintiffs argue the video is more prejudicial than probative but do not explain the source of the prejudice.  Plaintiffs may be referring to the relatively late production of the video.  Entergy contends that everything contained in the video has long been disclosed to the Plaintiffs and that the video reflects volumes of deposition testimony and documents produced in discovery.  Plaintiffs should already be on notice as to what a tabletop exercise is and may cross examine Mr. Wilson about the scenario presented in the video.  The Court finds that the video's value in visually presenting an example for the jury's reference outweighs any prejudice to the Plaintiffs resulting from its late production.

**II.   The Industry Video**

Defendant's September 5, 2014 Response does not specifically address the purpose for which Entergy intends to introduce the industry video nor does it proffer any foundation for its admission.  It does not appear, however, that Defendant intends to introduce the industry video to prove the truth of any statements it contains.  Rather Entergy may seek to present visual representations of specific areas within a nuclear power plant and plant security features.  If a witness can lay a foundation that the video fairly and accurately represents the plant's layout and security features and the Defendant does not intend to introduce the video for the truth of any statements contained in the video, it may be admissible.  Resolving this issue will be a question for trial and it is therefore inappropriate to exclude the video at this time.  Defendant shall proffer introduction of the video during trial outside the presence of the jury before its admission.

## Conclusion

The Court **denies** Plaintiffs' request to exclude both videos.

Dated at Burlington, in the District of Vermont this 15th day of September, 2014.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge

7